UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LORI GONWICHA,

             Plaintiff,               CIVIL ACTION NO. 08-15336

       v.                     DISTRICT JUDGE THOMAS L. LUDINGTON

COMMISSIONER OF             MAGISTRATE JUDGE VIRGINIA M. MORGAN
SOCIAL SECURITY,

             Defendant.
_____/

## REPORT AND RECOMMENDATION

### I.  Introduction

This Social Security case comes before the court on the parties' cross-motions for summary judgment.  For the reasons stated below, the court recommends that the Commissioner's motion for summary judgment be **GRANTED**, plaintiff's motion for summary judgment be **DENIED**, and plaintiff's complaint be **DISMISSED WITH PREJUDICE**.

### II.  Background

On December 29, 2004, plaintiff protectively filed an application for Social Security Disability Insurance Benefits (DIB), alleging that she was disabled due to a lower back injury, with a disability onset date of April 18, 2000.  (Tr. 46-48, 53, 58)  Plaintiff graduated high school, and has a work history including employment as cleaner/stocker, daycare operator, and receptionist.  (Tr. 59, 65)

The Social Security Administration (SSA) denied plaintiff's claim on May 4, 2005.  (Tr. 35-47)  Plaintiff then requested a hearing before an administrative law judge (ALJ).  (Tr. 42)  A hearing was held on February 5, 2007, before ALJ Michael Wilenkin.  Plaintiff and a Vocational Expert ("VE") testified at the hearing.  Plaintiff was represented by counsel.  (Tr. 426-455)

On April 20, 2007, the ALJ issued a written decision denying plaintiff's claim.  (Tr. 12-21)  The ALJ first determined that plaintiff last met the insured status requirements of the Social Security Act on September 30, 2004.  (Tr. 17)  The ALJ also determined that, through the date last insured, plaintiff had the following severe impairments: "status post L5-S1 disc herniation with fusion and herniation, and status post L4-5 disc herniation with fusion and instrumentation."  (Tr. 17)  The ALJ further determined that, while plaintiff's impairments were "severe" within the meaning of 20 C.F.R. § 404.1520(a)(4)(ii), she did not have an impairment, through the date last insured, that met or equaled any of the impairments listed in Appendix 1, Subpart P of the Social Security regulations.  (Tr. 17)  The ALJ also found that, through the date last insured, plaintiff retained the residual functional capacity (RFC) to:

> lift 10 pounds occasionally; lift less than 10 pounds frequently; sit, stand or walk for a total of eight hours in a work day with a sit/stand option; push or pull with limitation in using the upper extremities at or above shoulder level; perform postural activities occasionally except for twisting or torquing of the torso; perform any manipulative functions; see, hear and speak without limitation; and perform work in any environment.  In reference to mental function, [plaintiff] retains the ability to understand, remember and carry out simple instructions; make judgments on simple work-related decisions; interact appropriately with the public, supervisors and co-workers; respond appropriately to work pressures in a usual work setting; and respond appropriately to changes in a routine work setting.

- 2 -

(Tr. 18)  The ALJ then concluded that, while plaintiff could not perform her past relevant work through the date last insured (Tr. 19), "considering [plaintiff's] age, education, work experience and residual functional capacity, there were jobs that existed in significant numbers in the national economy that [plaintiff] could have performed."  (Tr. 20)  Accordingly, the ALJ found that plaintiff was not "disabled" within the meaning of the Social Security Act at any time through September 30, 2004, the date last insured.  (Tr. 21)  Plaintiff was forty-three years old on the date last insured and forty-five years old at the time of the ALJ's decision.  (Tr. 19)

On April 26, 2007, plaintiff  filed a request for review of the ALJ's decision with the SSA's Appeals Council.  (Tr. 8-11)  The Council denied the request on October 30, 2008.  (Tr. 3-5)  The ALJ's decision thus became the final determination of the Commissioner.

On November 6, 2008, plaintiff filed suit for review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).  As noted above, the matter comes before the court on the parties' cross-motions for summary judgment.  Plaintiff contends in her motion that the ALJ formed an inaccurate hypothetical question after incorrectly assessing plaintiff's credibility and failing to properly weigh an opinion of plaintiff's primary care physician.  Plaintiff also argues that the ALJ erred by failing to consider a closed period of disability.  The Commissioner contends that ALJ's decision is supported by substantial evidence and should thus be affirmed.

**III.  Legal Standards**

### A.  Disability Evaluation

A person is "disabled" within the meaning of the Social Security Act "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than twelve months."  42 U.S.C. §

423(d)(1)(A).  Further,

> an individual shall be determined to be under a disability only if
> his physical or mental impairment or impairments are of such
> severity that he is not only unable to do his previous work but
> cannot, considering his age, education, and work experience,
> engage in any other kind of substantial gainful work which exists
> in the national economy, regardless of whether such work exists in
> the immediate area in which he lives, or whether a specific job
> vacancy exists for him, or whether he would be hired if he applied
> for work.

42 U.S.C. § 423(d)(2)(A).  The claimant bears the burden of proving that he is disabled.  Foster

v. Halter, 279 F.3d 348, 353 (6th Cir. 2001).

A five-step process is used to evaluate DIB claims.  20 C.F.R. § 404.1520.  In Foster, 279

F.3d at 354 (citations omitted), the Sixth Circuit discussed the process:

> The claimant must first show that she is not engaged in substantial
> gainful activity.  Next the claimant must demonstrate that she has a
> "severe impairment."  A finding of "disabled" will be made at the
> third step if the claimant can then demonstrate that her impairment
> meets the durational requirement and "meets or equals a listed
> impairment."  If the impairment does not meet or equal a listed
> impairment, the fourth step requires the claimant to prove that she
> is incapable of performing work that she has done in the past.
> Finally, if the claimant's impairment is so severe as to preclude the
> performance of past work, then other factors, including age,
> education, past work experience, and residual functional capacity
> must be considered to determine if other work can be performed.
> The burden shifts to the Commissioner at this fifth step to establish
> the claimant's ability to do other work.

**B.  Standard of Review**

Plaintiff seeks review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g), which provides, in part:

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.

Judicial review under § 405(g) is limited to a determination of whether the ALJ's findings are supported by substantial evidence and whether the ALJ applied the proper legal standards. Brainard v. Secretary of HHS, 889 F.2d 679, 681 (6th Cir. 1989); Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997).  The Sixth Circuit stated in Brainard, 889 F.3d at 681, that "[s]ubstantial evidence is more than a mere scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Further, "the decision of an ALJ is not subject to reversal, even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ."  Key, 109 F.3d at 273.

**IV.  Analysis**

At the hearing, the ALJ posed a hypothetical question to the VE regarding the ability of an individual of plaintiff's age, education, work experience, and RFC to engage in substantial gainful activity.  Specifically, the ALJ asked the VE to assume a person:

> who is vocationally situated, as is the [plaintiff] in terms of age, education and past relevant work.  With respect to such a person, please assume that a reasonable interpretation of the credible medical record would allow for a conclusion and support a finding

she retains the residual functional capacity to sit six of eight hours of an eight-hour workday; stand or walk two of eight hours of an eight-hour workday; lift as much as ten pounds only occasionally and lesser weights more frequently.

You may assume a well-established history of pain and discomfort in the low back related to rather significant disc pathology and a history of multiple surgical interventions with respect to the underlying pathology, all of which has proven to be the source of continuing discomfort in the low back and lower extremities which, while undoubtedly disconcerting, is nevertheless not of sufficient severity, intensity or frequency to interfere with or otherwise preclude functioning at the level I suggested. It is, however, a sufficient consequent to limit her with respect to a variety of different activities

In this regard, she should avoid any activities requiring repetitive stooping, squatting and kneeling or crouching. She should avoid bending at the waist to floor level in all instances. She should avoid prolonged or protracted walking. She should also avoid repetitive climbing of stairs or ladders. She should not be required to twist or torque her torso throughout the extremes of range of motion, nor should she be required to or use her upper extremities at or above shoulder level. In addition to these limitations, the hypothetical individual should be allowed to change position between sitting and standing, standing and walking, and sitting and walking, as the case may be at her option.

You may assume the presence of what appears to be a certain element of either adjustment disorder or reactive depression, and according to this record has not significantly interfered with her ability to perform the usual and customary cognitive aspects of vocational functioning.

***

Lastly, you may assume, again, that the deficit suffered for the modalities employed to treat the same do not warrant that the hypothetical individual lie down during the course of a typical workday, lie down or otherwise seek any recumbency . . . All that being the case, would such an individual be able to perform any of the work performed by the [plaintiff] in the relevant past? If not,

- 6 -

would such an individual then be able to perform any other work
that exists in the geographic areas I mentioned?

[Tr. 451-52]

In response to the hypothetical, the VE testified that such a person could not perform

Plaintiff's past relevant work, but she could perform some service-related positions such as a

gate or lobby attendant (about 2,500 in Southeast Michigan) and industrial positions such as a

visual inspector (1,500 in Southeast Michigan).  (Tr. 453)  The figures would double statewide.

(Tr. 453)  On the basis of that testimony, the ALJ concluded that plaintiff was not disabled.

Where an ALJ poses a hypothetical question to a VE that fully and accurately

incorporates a claimant's physical and mental limitations, and the VE testifies that a person with

such limitations is capable of performing a significant number of jobs in the national economy,

such testimony is sufficient to support a finding that the claimant is not disabled.  Varley v.

Secretary of Health and Human Services, 820 F.2d 777, 779 (6th Cir. 1987).  Conversely, where

the hypothetical does not paint an accurate picture of the claimant's limitations, the VE's

testimony cannot support such a finding.  The ALJ is not required to specifically refer to a

claimant's medical conditions in the hypothetical.  Webb v. Commissioner of Social Security,

368 F.3d 629 (6th Cir. 2004).  Further, the ALJ is not required to include in a hypothetical

unsubstantiated allegations and complaints.  The hypothetical "need only include the alleged

limitations of the claimant that the ALJ accepts as credible and that are supported by the

evidence."  Delgado v. Commissioner of Social Security, 30 Fed.Appx. 542, 548 (6th Cir. 2002).

In this case, plaintiff argues that the hypothetical was inaccurate because it failed to

incorporate all of her limitations.  Plaintiff's argument that the hypothetical was inaccurate is

- 7 -

entirely dependent on her arguments that ALJ erred in assessing her credibility and failed to

properly consider Dr. Yuzon's opinion.  As discussed below, both of plaintiff's arguments must

be rejected.

### A. Plaintiff's Credibility

At her hearing, plaintiff testified that her pre-surgery conditions are gone, but that she has

had new issues since her surgeries.  (Tr. 437)  Plaintiff also testified that she had some pain relief

from surgery, but she still has pain everyday and that she is aware of pain all the time.  (Tr. 432,

435)  According to plaintiff, she takes medications every four hours and the medication helps

control the pain somewhat.  (Tr. 432, 434)  The pain in her groin and legs comes and goes, and

she has arthritis.  (Tr. 435-438, 445)

Plaintiff further testified that, due to her pain, she has trouble sleeping at night (Tr. 440),

she gave up bowling, darts and riding motorcycles (Tr. 442), and she can only walk a quarter-

mile in one hour.  (Tr. 443-444)  Plaintiff also stated she can only stand for thirty minutes and sit

without moving for one hour.  (Tr. 444)  Plaintiff further stated she would "go back and lay

down in my bed at least four times a day" for about "a half-hour to an hour" because "it gets too

uncomfortable sitting and standing and moving around" (Tr. 447), and that she also sat in a

reclining chair where her feet are at waist level (Tr. 447-48).  Plaintiff also testified that she had

depression relating to her history of back discomfort.  (Tr. 439)

Plaintiff did state that she does a little driving (Tr. 429), cooking (Tr. 442), and laundry

(Tr. 442).  Plaintiff is also able to look after her personal needs (Tr. 441) and she and her

husband go camping in a camper (Tr. 442, 447)

With respect to that testimony,  the ALJ's decision states:

> After considering the evidence of record, the undersigned finds that [plaintiff's medically determinable impairments could have been reasonably expected to produce the alleged symptoms, but that [plaintiff's] statements concerning the intensity, duration and limiting effects of those symptoms are not entirely credible.

(Tr. 18)

An ALJ's findings regarding the credibility of the applicant "are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility."  Walters v. Commissioner of Social Sec., 127 F.3d 525, 531 (6th Cir. 1997).  However, credibility assessments are not insulated from judicial review.  Despite the deference due, such a determination must nevertheless be supported by substantial evidence. Walters, 127 F.3d at 531.  With regard to allegations of disabling pain, the regulations provide that a claimant's statements regarding her "pain or other symptoms will not alone establish that [she is] disabled[.]"  20 C.F.R. § 404.1529(a); see also Walters, 127 F.3d at 531.  Rather, "there must be medical signs and laboratory findings which show that you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence...would lead to a conclusion that you are disabled."  20 C.F.R. § 404.1529(a).

Here, both parties and the ALJ accept that plaintiff has severe impairments due to her back pain.  Plaintiff felt back pain while moving a heavy object at work in April 2000 and, in August 2000, plaintiff's treating neurologist, Dr. Lee, found that plaintiff had signs and

symptoms of internal disc disruption at L5/S1.  (Tr. 229)  In October 2000, Dr. Lee stated that

plaintiff had "clear discogenic back pain due to degenerative disc disease" and that the discogram

showed abnormalities at L4/5 and L5/S1.  (Tr. 227)  Additionally, in November 2000, plaintiff

underwent intradiscal electrothermal therapy at L4/5 and L5/S1.  (Tr. 226)  Plaintiff continued to

see Dr. Lee on a monthly basis in the spring and summer of 2001 for complaints of back pain.

(Tr. 220-24)  On July 25, 2001, Ms. Gonwicha underwent a radical diskectomy and interbody

fusion of L5-S1.  (Tr. 167)  On May 12, 2003, plaintiff discussed with her doctors the pending

second lumbar surgery and they explained that there was .the possibility of failure of the fusion

to provide pain relief.  (Tr. 189)  Subsequently, plaintiff underwent another operative procedure

and fusion of L4-S1 on May 14, 2003.  (Tr. 135)  Given that medical history, as well as other

evidence, the ALJ determined that, through the date last insured, plaintiff had the following

severe impairments: "status post L5-S1 disc herniation with fusion and herniation, and status

post L4-5 disc herniation with fusion and instrumentation."  (Tr. 17)

    The dispute in this case arises from plaintiff's statements regarding her inability to get

through a work day.  As discussed above, plaintiff testified that she can only stand for thirty

minutes and sit without moving for one hour (Tr. 444), and that she needed to lie down at least

four times a day for about thirty minutes each time.  (Tr. 447)  The ALJ's hypothetical provides

that plaintiff  retains the RFC to sit six of eight hours of an eight-hour workday and stand or

walk two of eight hours of an eight-hour workday, so long as she is allowed to change position

between sitting. standing and walking at her option.  (Tr. 451-452)  Moreover, the ALJ's

hypothetical specifically states that plaintiff did not need to lie down during the course of a

typical workday.  (Tr. 452)  In general, the ALJ concluded that plaintiff's medically

determinable impairments could have been reasonably expected to produce the alleged symptoms, but that plaintiff's statements concerning the intensity, duration and limiting effects of these symptoms was not entirely credible.  (Tr. 18)

Plaintiff argues that the ALJ erred in assessing her credibility and forming the hypothetical question on the basis of the existence of the severe impairments and history of surgeries, plaintiff's statements regarding the intensity and effect of her impairments, and the evidence detailing plaintiff's continuing problems following the May 14, 2003 procedure.  As stated in plaintiff's brief, plaintiff was seen in post-op consultation on September 16, 2003 and, despite her improvement compared to her pre-operative status, Dr. Lee was still of the opinion that the patient is not ready to return to work.  (Tr. 186)  Plaintiff was again seen in November 2003 and it was noted that, although she has pain with activity, she does have long periods of time with very little pain, especially when she is less active.  (Tr. 185)  On June 30, 2004, plaintiff was seen in follow up and it was noted that she was having a set back as far as her pain level was concerned.  (Tr. 261)  Dr. Levine also stated at that time: "as you know, we cannot really see pain and I do agree there is a reason for having pain" (Tr. 261).  Additionally, in January 2006, plaintiff was seen and she reported pain of 8-10 out of a 10 scale and that she had an insidious onset of her current complaints of pain about six to seven months prior.  (Tr. 361)  Plaintiff also reported during that examination that items that decrease her pain include rest and lying down.  (Tr. 361)

However, as correctly described by the Commissioner, the bulk of the evidence regarding plaintiff's post-surgery treatment demonstrates that plaintiff's condition was improving and that the ALJ's opinion was correct with respect to plaintiff's credibility and RFC.  In May 2003, Dr.

Lee reported plaintiff "had a good postoperative course" and her "back pain is improved as compared to preoperatively." (Tr. 188) Plaintiff was also prescribed a brace and a clinical examination revealed plaintiff had good strength in the lower extremities. (Tr. 188) Furthermore, plaintiff was able to stand on her heels and toes, she was able to ambulate without difficulty, motor exam was normal, and sensation was intact. (Tr. 188)

In June 2003, Dr. Levine wrote that plaintiff "does not have her preoperative disc pain"(Tr. 279), and, in July 2003, Dr. Lee wrote that plaintiff's "preoperative symptoms of back pain have resolved" (Tr. 187). In August 2003, Dr. Levine noted that plaintiff was "essentially having no discomfort" and he suggested that plaintiff stop wearing the brace. (Tr. 278) Upon an examination that date, plaintiff moved about the room normally and there was no spasm or tenderness present. (Tr. 278) Dr. Levine subsequently told plaintiff's worker's compensation case manager that, while Dr. Levine could not state a definite date plaintiff could return to work, his best guess was nine to twelve months after surgery. (Tr. 283) In September 2003, plaintiff told Dr. Lee there was a "significant improvement in her symptoms," her "back pain has been greatly reduced," and she could sleep through the night. (Tr. 186) She also stated that her pain could become worse when she performed "vigorous activities." (Tr. 186) Dr. Lee instructed plaintiff that she could drive a car for short distances, but he also wrote that plaintiff was not ready to return to work. (Tr. 186)

In October 2003, Dr. Levine referred Plaintiff to a psychologist for chronic pain syndrome (Tr. 275) and plaintiff received treatment from a psychologist for pain management from November 2003 to June 2004 (Tr. 237-45). In November 2003, plaintiff underwent a motor exam, which revealed normal strength. (Tr. 185) Dr. Lee also noted on that date that

- 12 -

plaintiff was walking and driving more, and that, while she has pain with activity, "she does

have long periods of time with very little pain, especially when she is less active"  (Tr. 185)  In

January 2004, Dr. Levine wrote that plaintiff "should be considered a candidate for sedentary

type work" and that "once we get her into some type of employment, it will help her

do better as well."  (Tr. 272)

In February 2004, Dr. Levine noted that plaintiff was still having some back pain, and

plaintiff subsequently restarted physical therapy.  (Tr. 268)  Plaintiff received aquatic exercise

treatment from February 2004 to June 2004, at which point she stated her pain was at a 0 out of

10 as long as she was cautious.  (Tr. 232)  In March 2004, Dr. Levine wrote that therapy was

starting to help (Tr. 268), and, in April 2004, Dr. Yuzon noted Plaintiff's back was much better

and that no further surgery was planned (Tr. 306-07).

By May 2004, Dr. Levine was "seeing a win/win with less narcotic use and more

activity" and he also wrote: "I think she will reach maximum medical improvement within 180

days,

however, at this point I feel that we should start considering vocational rehabilitation training

and return to part-time sedentary work." (Tr. 264)  He further wrote: "I think if we can get her

back to work, we will help her improve more rapidly."  (Tr. 264)  In June 2004, Dr. Levine

wrote

Plaintiff could "return to a sedentary job by definition" and that he believed she could do "a

tad more than sedentary," but "sedentary to sedentary plus would be her current safe level,"  (Tr.

265)  Dr. Levine also told Plaintiff she could stop physical therapy, but needed to continue with

her program at a gym.  (Tr. 265)  In June 2004, Dr. Levine wrote that since Plaintiff stopped the

pool program she reported more pain.  (Tr. 261)  Specifically, plaintiff complained that she could

not lie on her stomach, but she also said the pain was not too bad when she was on her back.

(Tr. 261)  Dr. Levine then recommended she restart physical therapy while commenting, as

discussed above, "we cannot really see pain and I do agree there is a reason for having pain."

(Tr. 261)  In July 2004, Dr. Levine wrote that the water aerobics helped a lot and that plaintiff

was ready for vocational training.  (Tr. 257)  In September 2004, Dr. Levine wrote that plaintiff

"could return to some sort of very sedentary type job, one that would allow her to stand or sit at

her pleasure, with no more than five pounds of lifting."  (Tr. 252)

 In May 2005, Dr. Levine wrote that plaintiff's "[p]ain i[s] well controlled" (Tr. 383) and

he did not see plaintiff again regarding complaints of pain until six months later.   In November

2005, after the clinical evaluation was normal except for tenderness of the sacroiliac joint. Dr.

Levine provided plaintiff with an injection, which gave her a lot of relief.  (Tr. 383)  In January

2006, Dr. Levine found that plaintiff seemed to have coccydynia and he referred plaintiff to Dr.

Wiener for a caudal epidural steroid injection.  (Tr. 372, 361)  In May 2006, Dr. Levine noted it

had been five months since he had seen plaintiff and plaintiff said the injection gave her

excellent relief.  (Tr. 372)

 In addition to the history and course of plaintiff's treatment, the majority of medical

opinions offered in this case provide support for the ALJ's credibility determination.  As

discussed above, plaintiff's treating specialists Dr. Levine and Dr. Lee repeatedly opined that

plaintiff's condition had improved and that she was ready to return to work.  Additionally, on

April 27, 2005, a state agency disability examiner provided an assessment of plaintiff's physical

RFC and concluded plaintiff could perform sedentary work on or before September 30, 2004, her

- 14 -

date last insured.  (Tr. 120-27)  On January 30, 2007, Dr. Yuzon completed a form with respect to plaintiff's application for disability.  In the form, Dr. Yuzon opined plaintiff could lift less than ten pounds, stand or walk for at least two of eight hours in a workday, sit for eight hours in a workday with a sit/stand option, and these restrictions had been present since April 2000.  (Tr. 359)  Dr. Yuzon also opined that plaintiff's limitations would likely disrupt a regular job schedule, with plaintiff missing a minimum of forty hours a month.  (Tr. 359)  However, as discussed in greater detail below, Dr. Yuzon's opinion is entitled to less weight than the other treatment specialists because Dr. Yuzon did not treat plaintiff for back pain, the opinion conflicts with the opinions of plaintiff's treating specialists, and the opinion is not corroborated by the medical evidence of plaintiff's daily activities.

Furthermore, as found by the ALJ, plaintiff's record of daily activities also weakens her credibility.  Specifically, the ALJ noted that, since November 2004, plaintiff has been taking care of a baby and that she returned to driving in September 2003.  (Tr. 19, 252)  Similarly, plaintiff testified that she does cooking and laundry (Tr. 442), she is able to look after her personal needs (Tr. 441), and she and her husband go camping in a camper (Tr. 442, 447).

Plaintiff's testimony is not corroborated by the history and course of her treatment, the majority of medical opinions offered by her treating physicians, or her daily activities.  A plaintiff's statements regarding his pain or other symptoms are insufficient by themselves to establish that the plaintiff is disabled, and in this case that is essentially all that plaintiff offers.

### 2. Treating Physician Opinion

Plaintiff also argues that the ALJ erred in failing to accord controlling weight to the opinion of Dr. Yuzon, her primary care physician. Plaintiff thus invokes the "treating physician" rule. The "treating physician" rule provides as follows:

> If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(I) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.

20 C.F.R. § 404.1527(d)(2). As the Sixth Circuit stated in Walters v. Commissioner of Social Sec., 127 F.3d 525, 529-30 (6th Cir. 1997), "[i]n general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." Indeed, 20 C.F.R. § 404.1527(d)(2) provides that a "treating source's" opinion regarding the nature and severity of a claimant's condition is entitled to controlling weight if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. However, as suggested by the regulation, the ALJ is not bound by a treating physician's opinion if that opinion is not supported by sufficient clinical findings or is inconsistent with other substantial evidence in the record. See also Warner v. Commissioner of Social Sec., 375 F.3d 387, 390 (6th Cir. 2004)("Treating physicians' opinions are only given [controlling or substantial] deference when supported by objective medical evidence").

As described above, on January 30, 2007, Dr. Yuzon completed a form with respect to plaintiff's application for disability in which she opined that plaintiff could lift less than ten pounds, stand or walk for at least two of eight hours in a workday, sit for eight hours in a workday with a sit/stand option, and these restrictions had been present since April 2000.  (Tr. 359)  Dr. Yuzon also opined that plaintiff's limitations would likely disrupt a regular job schedule, with plaintiff missing a minimum of forty hours a month.  (Tr. 359)

With respect to that opinion, the ALJ stated:

> In January 2007, Dr. Yuzon, the claimant's primary care physician, opined that she could lift less than ten pounds, stand or walk for at least two of eight hours in a work day, sit for eight hours in a work day with a sit/stand option, and that these restrictions had been present since April 2000.  This portion of the opinion is accorded great weight as it is reasonably consistent with the evidence.  The doctor also opined that the claimant would miss more than 40 hours of work per month.  Such is not consistent with the evidence or well supported within the opinion.  The treating relationship began in April 2000, but has large gaps in sporadic treatment after September 2000.  The opinion is not entitled to controlling weight.

[Tr. 18]

There is a substantial basis supporting the weight given to Dr. Yuzon's opinion by the ALJ and the rejection Dr. Yuzon's view that plaintiff would miss more than forty hours a week due to her back pain.  As noted by the ALJ, Dr. Yuzon's opinion is found in a form and there is no support for that opinion found in the form itself.  Additionally, while Dr. Yuzon was one of plaintiff's treating physician, but did not treat plaintiff for back pain after August 2000.  As Dr. Yuzon noted at that time, plaintiff was seeing a back specialist through worker's compensation.  (Tr. 341-342)  Moreover, while Dr. Yuzon did treat plaintiff for a wide variety other ailments, such as heart palpitations, depression, anxiety, gastroesophageal reflux disease, hypertension,

high cholesterol and restless leg syndrome, her treatment notes are devoid of evidence supporting her opinion.  (Tr. 290-306, 309-333)  The treating physicians who did treat plaintiff for back pain, such as Dr. Lee and Dr. Levine, offered opinions conflicting with Dr. Yuzon's opinion regarding plaintiff's ability to complete a forty hour work week and their opinions are supported by the course of their treatment of plaintiff for back pain.  (Tr. 185-188, 252, 261-283) Similarly, a state agency disability examiner provided an assessment of plaintiff's physical RFC and concluded plaintiff could perform sedentary work on or before September 30, 2004, her date last insured.  (Tr. 120-27)  Given those conflicting opinions, as well as the history of plaintiff's treatment, the scope of Dr. Yuzon's treatment, and the lack of support in the opinion itself, the ALJ had a substantial basis in the weight he assigned Dr. Yuzon's opinion.[1]

## V.  Conclusion

For the reasons stated above, the court recommends that the Commissioner's motion for summary judgment be **GRANTED**, plaintiff's motion for summary judgment be **DENIED**, and plaintiff's complaint be **DISMISSED WITH PREJUDICE**.

---

[1]Plaintiff also briefly argues that this case should be remanded because the ALJ failed to consider a closed period of disability, with the benefit being "that [plaintiff's] date last insured would be extended further out and allow her to argue and the Judge to consider medical records of evidence that arose after the current DLI of September 2004."  (Plaintiff's Motion, p. 14) Plaintiff is correct that the finding of a closed period of disability would have pushed back plaintiff's date last insured, 20 C.F.R. § 404.110(c), but her argument is wrong on other points. First, the ALJ could, and did, consider evidence arising after the date last insured.  See King v. Sec'y of Health and Human Services, 896 F.2d 204, 205-206 (6th Cir. 1990).  See also Wirth v. Commissioner, 87 Fed. Appx. 478, 480 (6th Cir. 2003) (stating that post-expiration evidence may be considered as it relates back to the claimant's condition prior to the expiration of her date last insured).  Second, the ALJ did consider and reject a closed period of disability.  (Tr. 17-19) The statements that plaintiff relies on; that even if the ALJ were to find a closed period of disability, plaintiff would not be entitled to benefits (Tr. 19), is merely dicta and plaintiff does not directly challenge the ALJ's actual decision in her brief.  Similarly, plaintiff did not argue that she was entitled to a closed period disability at the hearing before the ALJ.  (Tr. 426-455)

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court.  The response shall address each issue contained within the objections specifically and in the same order raised.

S/Virginia M. Morgan
Virginia M. Morgan
United States Magistrate Judge

Dated: January 29, 2010

- 19 -

## **PROOF OF SERVICE**

The undersigned certifies that the foregoing document, Report and Recommendation, was served upon counsel of record via the Court's ECF System and/or U. S. Mail on January 29, 2010.

s/Jane Johnson
Case Manager to
Magistrate Judge Virginia M. Morgan